# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**JEFFREY K. MALONE,**
**Claimant Below, Petitioner**

**FILED**

December 11, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0815** (BOR Appeal No. 2053963)
                    (Claim No. 2015010663)

**ORBITAL ATK, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jeffrey K. Malone, by Counsel J. Robert Weaver, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Orbital ATK, Inc., by Counsel Alyssa A. Sloan, filed a timely response.

The issue on appeal is additional compensable conditions. The claims administrator denied a request to add cervical spinal stenosis, lumbar spinal stenosis, left shoulder impingement, and bilateral knee arthritis to the claim on March 15, 2018. On April 25, 2018, it denied a request to add cervicalgia, cervical radiculopathy, occipital neuralgia, and left upper limb neuropathy to the claim. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its February 4, 2019, Order, with the exception of occipital neuralgia, which it added to the claim.[1] The Order was affirmed by the Board of Review on August 19, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Malone, a composite specialist, was injured in the course of his employment when he struck his head on a rail on August 18, 2014. In an August 20, 2014, treatment note, James Deren, M.D., noted that Mr. Malone was treated for a head contusion with no loss of consciousness. He reported headaches and ear ringing. Dr. Deren diagnosed acute head contusion with post-

---

[1]The addition of occipital neuralgia to the claim was not appealed.

1

concussion headache. Mr. Malone's symptoms were mild and slowly improving. He was released to return to full duty work.

August 21, 2014, treatment notes from Western Maryland Regional Medical Center indicate Mr. Malone was seen for a persistent headache for the previous four days, following a work-related head injury. He reported ringing in his ears, stiff neck, dizziness, and an odd feeling in his right arm. Mr. Malone was diagnosed with closed head injury and post-concussive syndrome. Mr. Malone sought treatment from Dr. Deren on October 22, 2014, for right neck/trapezius pain, shoulder pain, tinnitus, and headaches. He reported prior tinnitus in 1982. Dr. Deren noted good cervical range of motion and diagnosed right ear tinnitus, improved headaches, and neck pain.

On October 30, 2014, Augusto Figueroa Jr., M.D., saw Mr. Malone. He noted minor neck pain before the injury, but Mr. Malone denied any significant symptoms prior to his compensable injury. Dr. Figueroa found no concrete signs of radiculopathy, myelopathy, or peripheral neuropathy. He opined that the compensable injury most likely caused a strain. He recommended x-rays, which ultimately revealed cervical spondylosis. That same day, Dr. Figueroa wrote a letter to the claims administrator opining that Mr. Malone's complaints were related to the compensable injury, and his neck symptoms would affect his work due to range of motion restriction.

Mr. Malone underwent physical therapy. A treatment note on November 17, 2014, indicates a diagnosis of cervicalgia. Mr. Malone denied any numbness or tingling in the left arm and reported improvement following therapy. By December 5, 2014, Mr. Malone had excellent cervical range of motion and was discharged from therapy. In a December 10, 2014, letter to Dr. Deren, Dr. Figueroa stated that Mr. Malone's neck pain was improved and that he could turn his head with no problem. He noted no apparent weakness in the extremities.

A January 27, 2015, treatment note from ATK Occupational Health indicates Mr. Malone's headaches had resolved and his neck stiffness had improved. On May 15, 2015, Mr. Malone reported low back and bilateral leg pain. He also reported a recent fall at work. On May 28, 2015, he was seen for back pain after pulling on a five-hundred-pound cart. On June 6, 2015, Mr. Malone reported increased knee pain. He stated that a recent MRI showed a tear in the knee on July 21, 2015. On February 12, 2016, Mr. Malone reported difficulty turning his head to the side.

Mr. Malone returned to Dr. Figueroa on February 29, 2016, and reported that he had developed recurrent neck pain six months prior along with intermittent left arm numbness. He also reported low back pain and difficulty turning his head. On March 4, 2016, Dr. Deren noted that Mr. Malone had progressive left-sided cervical pain. Dr. Deren noted that a 2014 cervical MRI showed a C3-4 disc bulge but opined that the findings did not explain Mr. Malone's current symptoms.

Mr. Malone began treating with Allison Evans-Wood, D.O., on March 4, 2016. She noted that he reported neck pain causing numbness in his arm and fingertips that started a month ago. Dr. Evans-Wood diagnosed cervical disc herniation with cord compression, peripheral neuropathy, and cervical pain. Cervical x-rays performed on March 9, 2016, showed spondylosis with no

evidence of disc space narrowing. On March 11, 2016, a cervical MRI showed small left paracentral spondylosis with disc herniation at C3-4. There was no spinal cord compression. It was noted that Mr. Malone had encroachment into the left neural foraminal which had been noted since 2014. A lumbar MRI showed stable, mild stenosis at L3-4 caused by facet arthropathy. There had been no significant changes since March of 2014.

Mr. Malone was referred to Brian Holmes, M.D., a neurosurgeon. On March 30, 2016, Dr. Holmes noted that Mr. Malone had full range of motion in his cervical spine. He also noted subjective complaints of left arm numbness but no hypoesthesia or weakness on examination. Regarding the lumbar spine, Dr. Holmes opined that the symptoms were likely resulting from L4-5 stenosis with facet arthropathy. On April 27, 2016, it was noted that Mr. Malone saw slight symptom improvement after an L4-5 facet injection. He reported low back pain that radiated down the left leg. On June 15, 2016, Mr. Malone was seen by Dr. Holmes's physician's assistant. It was noted that he saw one week of symptom improvement following a cervical spine injection. Mr. Malone was diagnosed with neck pain. A repeat cervical injection and lumbar physical therapy were recommended.

ChuanFang Jin, M.D., performed an independent medical evaluation on June 30, 2016, in which she found that Mr. Malone's symptoms gradually worsened over time. He did not have any numbness in the left arm until January of 2016. Dr. Jin diagnosed cervical whiplash injury, preexisting degenerative cervical disc disease, and left arm radiculitis secondary to degenerative disc disease. Dr. Jin opined that Mr. Malone's current symptoms were not related to the compensable injury, but rather, resulted from preexisting degenerative disc disease. Dr. Jin opined that further treatment would not be necessary for the compensable injury and that Mr. Malone had reached maximum medical improvement.

Mr. Malone returned to Dr. Holmes's office for follow-up of cervical, lumbar, and extremity pain with numbness and weakness on June 27, 2016. On examination, Mr. Malone had full cervical range of motion but diminished lumbar range of motion. He was diagnosed with neck pain and mild cervical disc degeneration. On August 31, 2016, Mr. Malone reported constant left arm and neck pain. Dr. Holmes diagnosed neck pain, back pain, mild cervical disc degeneration, and cervical neural foraminal stenosis. Dr. Holmes performed L4-5 surgery for severe lumbar spinal stenosis and lumbar radiculopathy on September 26, 2016. On October 26, 2016, Mr. Malone reported continued lumbar spine symptoms despite surgery. Mr. Malone underwent a left arm EMG on October 26, 2016, that showed no evidence of radiculopathy or neuropathy.

On December 22, 2016, Mr. Malone reported left knee buckling and right knee pain to Dr. Holmes. He was diagnosed with neck pain, rotator cuff tendonitis, and myofascial pain. His status remained unchanged on January 23, 2017. On August 18, 2014, Dr. Holmes's physician's assistant stated that the low back pain had been present for several years and became worse in 2014.

Cervical x-rays showed mild degenerative arthritis and mild spondylosis on February 3, 2014. On March 31, 2017, Mr. Malone underwent a cervical MRI which showed resolution of the previously noted C3-4 disc herniation. It also showed progression of bilateral neural foraminal stenosis due to uncovertebral arthrosis.

3

Mr. Malone sought left shoulder treatment from Roy Carls, M.D., on April 4, 2017. It was indicated that Mr. Malone had a chronic rotator cuff tear that had been present in the left shoulder since 2007. He had previously undergone surgical repair, but the procedure was unsuccessful. Dr. Carls diagnosed left shoulder pain, likely secondary to rotator cuff tears, chronic bursitis, and impingement. He noted that it was possible the problems were originating in the cervical spine. Mr. Malone returned on May 16, 2017, at which time Dr. Carls diagnosed chronic rotator arthropathy and recommended surgery. On September 26, 2017, it was noted that Mr. Malone underwent surgery on the left shoulder. His pain had somewhat improved. Dr. Carls opined that the left shoulder symptoms were being aggravated by Mr. Malone's cervical spine condition.

In a September 28, 2017, treatment note, Leslie Foster, D.O., noted that Mr. Malone was treated with pain management for lumbar spondylosis without myelopathy or radiculopathy, left-sided neck pain, and left arm pain. Mr. Malone also reported bilateral knee pain secondary to osteoarthritis. Dr. Foster diagnosed lumbar spondylosis but noted mild disc bulge at C7-T1 and a small disc herniation at C3-4, which could explain his shoulder pain. Mr. Malone underwent a cervical MRI on October 10, 2017. It showed a small to moderate C4-5 disc herniation, which had grown since the last MRI; moderate bilateral neural foraminal stenosis; and unchanged mild degenerative spondylosis.

On October 24, 2017, Dr. Carls noted that Mr. Malone was three months post left shoulder surgery and was slowly seeing improvement. Dr. Carls found that Mr. Malone suffers from multi-joint osteoarthritis. Mr. Malone returned on December 12, 2017, and reported satisfaction with his surgery. It was noted that he had bilateral knee arthritis.

Dr. Foster completed a diagnosis update on January 4, 2018, requesting that cervical spinal stenosis, lumbar spinal stenosis, left shoulder impingement, and right knee osteoarthritis be added to the claim. On February 29, 2018, Dr. Evans-Wood completed a diagnosis requesting the addition of cervicalgia, cervical radiculopathy, occipital neuralgia, and left upper limb neuropathy to the claim. The claims administrator denied the request to add cervical spinal stenosis, lumbar spinal stenosis, left shoulder impingement, and bilateral knee arthritis to the claim on March 15, 2018. On April 25, 2018, it denied the request to add cervicalgia, cervical radiculopathy, occipital neuralgia, and left upper limb neuropathy to the claim. Cervical strain was added to the claim on May 2, 2018, and on May 4, 2018, closed head injury, bilateral tinnitus, and cervical strain were added to the claim.

The Office of Judges affirmed the March 15, 2018, claims administrator's decision and modified the April 25, 2018, claims administrator decision to add occipital neuralgia to the claim in its February 4, 2019, Order. Regarding lumbar spinal stenosis, left shoulder impingement, and bilateral knee osteoarthritis, the Office of Judges concluded that the conditions are not related to the compensable injury. The mechanism of injury, striking the head, clearly did not cause bilateral knee osteoarthritis. The mechanism of injury also called into question the diagnosis of lumbar spinal stenosis. The Office of Judges noted that Dr. Holmes's office opined on January 23, 2017, that Mr. Maonle's low back pain was unrelated to the compensable injury. The Office of Judges concluded that the condition should not be added to the claim. Finally, the Office of Judges

4

concluded that left shoulder impingement was not a compensable condition. Mr. Malone's left shoulder problems began in 2008, two years prior to the compensable injury, when he underwent an unsuccessful rotator cuff repair. The Office of Judges found that Dr. Holmes opined that the left shoulder symptoms were due to his rotator cuff tears. It therefore concluded that the left shoulder impingement was more likely than not unrelated to the compensable injury.

The Office of Judges next addressed the cervical spine conditions at issue. It found that the claim was held compensable for cervical strain. The Office of Judges noted that four months after the compensable injury, Mr. Malone was discharged from physical therapy, and his neck pain was improved. He did not seek treatment again for the cervical spine for a year. An MRI taken in 2016 showed progression of stenosis. The Office of Judges noted that Dr. Holmes documented congenital multilevel foraminal narrowing. Cervical MRIs showed stenosis due to osteophytes, and Dr. Carls diagnosed multi-joint osteoarthritis. The Office of Judges concluded that cervicalgia, cervical radiculopathy, and cervical stenosis are not related to the compensable injury.

The Office of Judges next addressed Mr. Malone's left upper limb neuropathy. It found that he has left shoulder symptoms largely due to preexisting shoulder impairment, and to a small degree, cervical spine issues. However, the evidence indicates that the compensable injury resulted in a cervical sprain, which would not cause left limb neuropathy. The Office of Judge found that a preponderance of the evidence indicates the requested cervical spine conditions are the result of preexisting, congenital stenosis and arthritis. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on August 19, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Mr. Malone clearly did not develop bilateral knee osteoarthritis as a result of striking his head. Likewise, the mechanism of injury and medical evidence of record fail to support the addition of lumbar spine conditions to the claim. The denial of left shoulder impingement to the claim was proper as the evidence indicates the condition is related to preexisting issues. The requested cervical spine conditions and left upper limb neuropathy were also properly denied because the evidence indicates they are not the result of the compensable injury.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 11, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison